Millard L. Midonick, S.
In this proceeding for the settlement of the final account of the ancillary executor, certain objections have been raised by the domiciliary executor and the residuary legatees. Following a conference the parties have submitted the issues for determination by the court.
Objection one has been withdrawn. Objection two relates to the personal claim of the ancillary executor for $50,000 and $8,500 disbursements in respect of personal services claimed to have been rendered as an accountant for decedent from 1940 to his death bn June 11, 1972. Unless the Statute of Limitations has been tolled in some manner, this claim is barred by the six-year statute (CPLR 213), insofar as it relates to services allegedly performed prior to the date of decedent’s death. A hearing is necessary on the issues of what services were performed within this time; the value of those services; and the disbursements requested. Petitioner will be afforded an opportunity to prove his allegation that services rendered prior to this six-year period were in the nature of "continuous services” requiring distinct steps and proceedings in order to obtain refunds of taxes. (Cf. Bathgate v Haskin, 59 NY 533; Wilkin v Dana R. Pickup & Co., 74 Misc 2d 1025.) It is noted that performance of services relating generally to decedent’s financial affairs will not suffice as "continuity of services” (Trans Amer. Development Corp. v Leon, 279 App Div 189, affd 305 NY 590). Proof of the value and nature of legal services requested and concerning objection three may be submitted at the hearing.
Objection four concerning the dates of valuation of inven *826 tory for commission purposes has been complied with by the petitioner.
The remaining objection seeks to surcharge the ancillary executor for the decrease in the estate property "caused by his unreasonable retention of such property”.
Ancillary letters testamentary were granted to petitioner by this court on November 30, 1972. The bulk of the assets were received by the petitioner from the trustees of a trust under the will of George L. Bourne pursuant to a decree of the Surrogate’s Court, Westchester County, entered February 15, 1974. It is unclear when all these assets were physically received by the petitioner but petitioner mentions April 3, 1974 as the date the stocks were received. On March 11, 1974 petitioner wrote to the domiciliary executor in Florida stating: "It is my understanding that that portion of the estate represented by the stocks being distributed will not be required for completion of the administration of the estate. I think it is imperative, therefore, that the two charities be contacted promptly to ascertain their wishes as to whether they wish to receive distribution in cash or in kind. I understand from my counsel * * * that distribution should not be made except pursuant to a proper decree of the Surrogate’s Court of New York County.” On the same date he wrote letters to the two charities, Johns Hopkins University and Tufts University, the residuary beneficiaries under the will, enclosing a list of the securities stating that these securities would be distributable to them unless they decided to have the securities sold and distribution in cash.
On March 13, 1974 the domiciliary executor sent a letter in reply to petitioner’s letter stating that he had "been in touch with both Tufts and Johns Hopkins * * * Both institutions wand (sic) distribution in kind and not in cash * * * Also, the Probate Judge here to whom I am answerable, takes the position that the proceeds of the ancillary administration must be remitted to the domiciliary administration, and has instructed me to take whatever steps are necessary to see that this is done * * * I have also taken the matter up with the two charities and they have approved a distribution from the ancillary to the domiciliary administrations.”
Subsequently petitioner received a letter from Johns Hopkins University dated March 15, 1974 which stated: "Rather than sell the stocks, would you please arrange to have delivery made to our custodian bank, The Fiduciary Trust Com *827 pany of New York, One Wall Street”. Tufts University also replied by letter dated April 16, 1974 indicating its desire to have distribution in kind and provided petitioner with the name of its custodian bank located in Boston, Massachusetts. The petitioner proceeded to prepare his account and the account was filed October 9, 1974. Petitioner has not transmitted the securities to the domiciliary executor nor has he distributed them to the residuary legatees. The value of the securities has decreased and the domiciliary executor and the two residuary legatees seek to surcharge the petitioner for such decrease because of his failure to make an in-kind distribution to the residuary legatees within a reasonable time.
It is ordinarily the duty of ancillary fiduciaries to transmit the funds in their possession to the fiduciary appointed in the domiciliary jurisdiction. (Matter of Ruperti, 194 Misc 376; Matter of Worch, 124 Misc 380; 5 Warren’s Heaton, Surrogates’ Courts [6th ed], § 459, par 2.) The court supervising ancillary administration, however, has discretion to decree direct distribution in whole or in part to the estate beneficiaries. (SCPA 1610, subd 3; Matter of Heller-Baghero, 26 NY2d 337, 344; Powers, 1970-1973 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1610.) This discretion resides in the court and not the ancillary fiduciary. In discussing SCPA 1610, it is stated in Warren’s Heaton on Surrogates’ Courts (6th ed, vol 5, § 459, par 3, cl [i]) that: "The statute likewise permits distribution to the legatees or distributees of the decedent. It is obvious, however, that this is not only discretionary with the court but that it would be an unusual case in which such distribution would be directed. The rules previously stated as applying to the payment of creditors apply with greater force to distribution to the persons interested in the estate of any surplus. This is clearly a matter that under normal circumstances is best done in the domiciliary jurisdiction. And, section 1610 of the Surrogate’s Court Procedure Act provides that unless a court shall direct the ancillary fiduciary to distribute the assets as provided in subdivisions 2 and 3 of section 1610 is required to transmit the remaining assets to the state or country where domiciliary letters were granted to be disposed of pursuant to the law thereof.”
In the instant case the petitioner was presented with a letter from the domiciliary executor stating that the stocks *828 should be transmitted to him and acknowledging in the letter of March 13, 1974 that "this is the normal procedure in New York unless some special necessity is shown to the New York Court requiring distribution by the ancillary executor direct to the beneficiaries.” Petitioner was also faced with the letters of the residuary legatees which, contrary to the domiciliary executor, requested distribution directly to them. It was in light of these circumstances that he did not distribute nor transmit the stock but rather sought to settle his account and obtain a decree of the court. While he did not request the court to direct distribution directly to the legatees, he cited the foreign fiduciary and legatees and they were thus given the opportunity to seek whatever relief they wished.
The domiciliary executor who had previously requested transmittal of the stock to himself and acknowledged the necessity of obtaining a court order in New York for distribution directly to the beneficiaries has now joined with the legatees in seeking distribution of the stock directly to the legatees. Together they further claim that distribution should have taken place in April or May of 1974, alleging that retention of the stocks was not necessary to satisfy New York creditors. The court must disagree with this position. At the outset and because of the conflicting positions of the objectants as evidenced by their letters, the petitioner was in a dilemma as to whether to transmit the assets to Florida or distribute to the legatees. Petitioner was also concerned with SCPA 1610 which implies that distribution by an ancillary fiduciary directly to estate beneficiaries must be by court order. Finally, even though no New York creditors’ rights may have been in jeopardy, the court, in directing distribution, must be satisfied that no compelling reasons exist in the domiciliary jurisdiction requiring transmission to that jurisdiction. (Cf. Matter of Gyfteas, 36 AD2d 380.) In light of these facts the petitioner should not be surcharged for his conduct. It is noted that petitioner could have sold the stock and prevented any loss, but he was prevented from doing this by acts of the legatees demanding distribution in kind. Furthermore, while petitioner may have instituted proceedings under SCPA 1610 in order to solve the question of disposition of assets, his failure to do so should not subject him to penalty especially since the accounting proceeding was promptly filed within a reasonable time as admitted by objectants. It is further noted that such procedure was also available to objec *829 tants who themselves waited until the accounting to seek such relief.
This matter shall be set for a hearing in accordance with this decision and the parties will be notified of the time and date. An affidavit on behalf of the domiciliary executor should be submitted explaining whether there is any reason existing in domiciliary jurisdiction to prevent direct distribution. Otherwise, an intermediate decree directing distribution of the stocks in question to the charitable legatees may be submitted.